IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CASE NO. 3:20-CR-286-E |
| | § | |
| | § | |
| LAWRENCE BILLINGS, SR. (02) | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the referral of the District Judge, Doc. 76, before the Court is Defendant's *pro se* pleading titled "Motion to Vacate and Dismiss Plea Agreemen[t] Convictions Count One of Indictment and its Remaining Counts- 2-5, on Grounds Defendant is Innocent of those Possession, due to Ineffective Assistance of Counsel" (hereafter, "Motion to Withdraw Guilty Plea"), Doc. 72. As the title of the *pro se* pleading indicates, Defendant seeks to withdraw his guilty plea and the dismissal of the remaining charges against him (although there are none) and, in support, asserts ineffective assistance of counsel and actual innocence. For the reasons stated here, Defendant's motion should be **DENIED**.

I. BACKGROUND

Defendant and two others, including his son, Lawrence Billings, Jr. ("Junior"), are charged in a one-count indictment with Conspiracy to Possess with Intent to Distribute a Mixture and Substance Containing a Detectible Amount of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1)&(b)(1)(C). Doc. 3. At his initial appearance on the charge, the Court determined that Defendant qualified financially for the appointment of an attorney and appointed counsel to represent him. Doc. 19.

Subsequently, a jury trial was scheduled for November 16, 2020, Doc. 26, which was later continued to February 16, 2021, Doc. 41.  However, Defendant appeared before Magistrate Judge Irma Carrillo Ramirez on December 8, 2020, and pled guilty to the sole count of the Indictment pursuant to a *Plea Agreement* executed on October 19, 2020.  Doc. 42; Doc. 46; Doc. 47.  No objections were filed to the Magistrate Judge's *Report* recommending that the District Judge accept the guilty plea and, on December 22, 2020, District Judge Ada Brown accepted the report of the Magistrate Judge, accepted Defendant's guilty plea, and adjudged him guilty of Conspiracy to Possess with Intent to Distribute a Mixture and Substance Containing a Detectible Amount of Cocaine, as alleged in Count One of the Indictment.  Doc. 53.

In accordance with the Court's *Scheduling Order*, Doc. 54, a *Presentence Report* was filed March 2, 2021.  Doc. 65.  Defendant's *pro se* Motion to Withdraw Guilty Plea followed on April 29, 2021.  Doc. 72.  In response, the Government filed its *Motion to Strike Defendant's Pro Se Motion to Vacate his Guilty Plea, and Alternatively, Government's Opposition to Defendant's Motion to Vacate* on June 16, 2021.  Doc. 80.

An evidentiary hearing was held on June 23, 2021, at which Defendant appeared in person and through counsel of record, Ezekiel Tyson, Jr.  The Government appeared by and through Assistant United States Attorney Suzanna Etessam.  Doc. 85.  After consideration of the pleadings, applicable law, and proffers of both Defendant and counsel at the hearing, the Court finds that Defendant's claims of actual innocence and ineffective assistance of counsel are frivolous and meritless, and that Defendant has wholly failed to meet his burden to justify the withdrawal of his guilty plea.

## II. APPLICABLE LAW

"[I]t is well settled that there is no absolute right to withdraw a guilty plea before the imposition of sentence. Instead, the right to do so is within the sound discretion of the trial court which will be reversed by an appellate court only for an abuse of that discretion." *United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir. 1981) (citations omitted). Indeed, a district court may permit a defendant to withdraw his guilty plea prior to sentencing for "any reason the granting of the privilege seems fair and just.'" *United States v. Carr*, 740 F.2d 339, 343 (5th Cir. 1984) (cited and quoted cases omitted). In determining whether to permit a defendant's withdrawal of his guilty plea under this standard, a district court must consider seven factors: (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources. *Id.* at 343-44. These factors are considered under the totality of the circumstances, and it is the defendant's burden to establish that withdrawal of his guilty plea is justified. *Id.* at 344.

## III. ANALYSIS

As applied in this case, the *Carr* factors weigh against permitting Defendant to withdraw his guilty plea.

### A. Assertion of Actual Innocence

Defendant asserts in the title of his Motion to Withdraw Guilty Plea that he "is innocent of those possession, due to ineffective assistance of counsel," however, he alleges no factual

3

basis from which actual innocence can be inferred. The motion itself makes no other mention of actual innocence and complains only that counsel was ineffective for (1) the [in]voluntariness of Defendant's Plea Agreement, (2) failing to challenge an affidavit of one of the investigators, (3) failing to file a motion to suppress based on the length of the investigatory stop and the officer's basis for reasonable suspicion, (4) the warrantless search and seizure of his vehicle, and (5) failing to adequately investigate Defendant's personal history to offer evidence in mitigation of his sentence. Doc. 72 at 3-4.

Inexplicably refuting his own claim of innocence, in the subsequently filed affidavit in support of Defendant's Motion to Withdraw Guilty Plea, Defendant swears to facts that establish he is actually guilty of the offense of conviction. *See* Doc. 77 *passim* ((1) "my son, Lawrence Billings, Jr., came to me and asked if I could drive him to Texas, to see a female friend"; (2) "[Junior] said he would pay all expenses for the trip and coming back"; (3) "[Junior] gave me money to put on my Chase debit card to pay for renting a vehicle"; (4) Defendant and Junior proceeded to Texas and "College Point[1]," where Defendant rented a motel room for himself and co-defendant Lanphear; (5) Defendant and Lanphear stayed in the room for four or five days, while Junior stayed at the nearby residence of a female friend; (6) on or about the fifth day, Junior instructed Defendant and Lanphear "to get [their] things together, because [they were]" going to the El Paso airport to "meet Rashique Dixon"; (7) after arriving, Junior called Rashique, who came out of the airport terminal and got into Defendant's rental car; (8) Defendant drove, as directed by Rashique, to the airport hotel parking lot where Junior and Rashique left the car and

---

[1] Based on Defendant's assertion that the rented motel room was "about four blocks down the road" from "famous Texas A. M. College," Doc. 77 at 3, it is reasonable to infer that "College Point" was actually College Station, Texas.

walked out of sight; (9) about an hour later, Defendant saw Junior and Rashique getting out of a white pickup truck; (10) Defendant heard Rashique arguing with Junior about getting more money for Rashique's "connection [than] $2,000" and that Rashique had just taken Junior "to meet with his connection who are hook[ed]-up with members of Mexican Cartel"; (11) Defendant rented a motel room in El Paso where Junior and Rashique continued to argue about each's contribution to the purchase of a "kilo"; (12) after Rashique received a phone call, they drove to a residence in New Mexico where Defendant and Lanphear remained in the car while Junior and Rashique went inside; (13) while waiting, Defendant called Junior and asked if he could get Lanphear "some to hold her" because "she had no drug in her's [sic] system for a while" and "was getting sick"; (14) Junior obliged; (15) when Rashique and Junior came out of the house, they told Defendant and Lanphear that they were "going through New Mexico's last check point"; (16) Lanphear was driving at that point, but Defendant asked her to pull over because she was driving erratically; (17) Defendant took the wheel because Lanphear "appear[ed] to be a little bit high"; (18) at the last checkpoint, an agent asked Defendant to pull the car over and then for consent to search, which Defendant gave; (19) the perimeter of the vehicle was subjected to an open-air canine sniff search and x-rayed, but nothing illegal was discovered; (20) they later stopped at a gas station, where Lanphear went to the bathroom and emerged apparently high again; (21) Rashique had left the car, and Junior told Defendant that Rashique "had got[ten] his half-brick on consignment," was sending it through the mail, and was flying home; (22) Junior said he had "changed his mind and was also sending his half-brick by U.S. Mail, to someone in [New York]"; (23) they were headed back to New York on Interstate 30 when stopped by the police; (24) after stating he would only give Defendant, the driver, a

5

warning ticket, the officer said he smelled marijuana and asked if Junior had been smoking it; (25) Junior denied smoking marijuana recently, but admitted smoking it earlier, at which time the scent must have "gotten into his clothing"; (26) after a criminal history check on Defendant revealed "numerous arrests for narcotics," the deputy became "aggressive" with Defendant; (26) the deputy inquired about whether there was anything illegal in the car and requested permission to search, which Defendant granted; and (27) ultimately, a box secured with clear tape was found (which apparently contained the cocaine)).  Again, Defendant's sworn version of the events is inculpatory rather than exculpatory.

Additionally, while under oath during the rearraingment hearing, Defendant expressed some confusion regarding the elements of the conspiracy offense to which he proposed to plead guilty.  In response to the Magistrate Judge's inquiry, he volunteered:

> I mean, I'm guilty, but I – I  had knowledge that – that illegal things was – was being done. I admit to that. However, . . . I never made no agreement. But I did – the only thing that I admit is to drive a car for my son. And with that knowledge, that put me directly involved without realizing it at that moment. But after realizing what transpired, I'm guilty of being – having knowledge that something was going on, even though I didn't participate directly.  Indirectly, I did.

Doc. 80-1 at 16.  After sufficient opportunity to consult privately with counsel, however, the elements were stated again, Defendant affirmed that he understood them, and admitted that he "committed each of [the] elements."  Doc. 80-1 at 19-21.

Defendant also affirmed that he signed the *Factual Resume* after discussing "the whole – all of it with [his] attorney" and fully understood everything set out in the *Factual Resume* before signing it, and that the stipulated facts contained therein were true.  Doc. 80-1 at 30-31.  Specifically, Defendant stipulated in the *Factual Resume* that after the cocaine was in the

vehicle, he was transported to the Hunt County Sheriff's Office where he waived his constitutional rights and admitted that:

> [He], along with his son, Billings Jr., and Lanphear, had traveled to Texas and New Mexico from New York. During their trip, they met with Mexican cartel members and Billings Jr. purchased a distributable quantity of cocaine. Billings Jr. paid for the trip's expenses including the gas, food, hotel, and vehicle rental, and Billings Jr. also paid $17,000.00 toward the cocaine's purchase. Billings Sr. and Lanphear both drove along the way because they had driver's licenses, while Billings Jr. did not. And before Billings Jr. purchased the cocaine, Lanphear consumed some to verify that [sic] its quality.

Doc. 44 at 3-4.

In sum, Defendant has fallen pitifully short of establishing his actual innocence. His belated assertions are belied by the record. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("a defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath.") (citing *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977) ("[s]olemn declarations in open court carry a strong presumption of verity")). *See also Carr*, 740 F.2d at 344 ("[innocence] claim alone is far from being sufficient to overturn denial of a withdrawal motion. Otherwise, the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right.") (cited case omitted).

This *Carr* factor weighs against permitting Defendant to withdraw his guilty plea.

### B. Delay in Filing Motion to Withdraw

Although Defendant was specifically admonished at the rearraignment hearing that he had 14 days from the filing of the Magistrate Judge's report recommending that his guilty plea be accepted to object, Doc. 80-1 at 32, no objection was filed. And even after the *Report and Recommendation* was accepted and Defendant was adjudged guilty of the sole count of the Indictment, he did not file his *pro se* Motion to Withdraw Guilty Plea until 128 days later. Under

the totality of the circumstances, the Court finds that it is no coincidence that the instant motion was only filed after the *Presentence Report* was filed on March 2, 2021. Doc. 65. As defense counsel suggested at the June 23, 2021 hearing—and the Court already suspected—Defendant's belated attempt to cast doubt on the voluntariness of his guilty plea and withdraw it stem not from any factual basis, but from "buyer's remorse" upon learning of the *Presentence Report's* findings and guideline calculations. However, at his rearraignment hearing, Defendant was explicitly admonished, "Do you understand that if the sentence you get is more than what you expect it to be, you will still be bound by your plea of guilty?" Doc. 80-1 at 30. He affirmed under oath that he did. Doc. 80-1 at 30.

This *Carr* factor weighs against permitting Defendant to withdraw his guilty plea.

### C. Close Assistance of Counsel Was Available

Defendant had the close assistance of counsel both before and at the time of his guilty plea. At the rearraignment hearing, Defendant confirmed unequivocally that he (1) had a full opportunity to discuss his case with counsel and was "satisfied fully with the representation and advice" he had received from counsel, Doc. 80-1 at 12-13; (2) had discussed with his attorney the Sentencing Guidelines and how they might apply in his case, Doc. 80-1 at 11; (3) discussed the plea agreement with counsel, asked counsel any questions he had before signing it, and fully understood it, Doc. 80 at 22; and (4) did the same before signing the *Factual Resume*, Doc. 80-1 at 31. While the rearraignment hearing was conducted via video teleconference, upon Defendant's knowing and voluntary consent after discussing the matter with counsel, Defendant was advised of his right to consult privately with counsel and he agreed to advise the Court at any point he desired to do so. Doc. 80-1 at 7-9. As mentioned previously herein, at one point,

8

the hearing was paused so that Defendant could confer with counsel privately. Doc. 80-1 at 18-19.

Further, neither in his Motion to Withdraw Guilty Plea, supporting affidavit, nor at the June 23, 2021 hearing, did Defendant assert any basis for the Court to conclude that counsel has provided ineffective assistance. To succeed on a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Here, however, Defendant's allegations amount to mere disagreement with counsel's sound strategy, rather than demonstrating any deficiency in counsel's performance. *See Id.* at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.") (citation omitted).

And as to Defendant's assertion at the June 23, 2021 hearing that defense counsel advised the Government of facts establishing Defendant's guilt — to-wit, that Defendant was aware that the cocaine was in the vehicle prior to its discovery by law enforcement — the Court finds it wholly incredible. Conversely, the Court credits the denial of the same by counsel, whom the Court knows well through his countless representations of criminal defendants in this district, and whose reputation for honesty is beyond reproach. The accusation is simply senseless in addition to being unsupported.

This *Carr* factor weighs against permitting Defendant to withdraw his guilty plea.

### D. Guilty Plea Was Knowing and Voluntary

Despite Defendant's self-serving and conclusory assertions to the contrary, the record establishes that his guilty plea was knowing and voluntary. To be constitutionally valid, a guilty plea must be knowingly, voluntarily, and intelligently made. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel. *United States v. Shepherd*, 880 F.3d 734, 740-41 (5th Cir. 2018); *see also Boykin v. Alabama,* 395 U.S. 238, 244 (1969) (finding that to be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence"). Here, a review of the *Plea Agreement*, Doc. 42, the *Factual Resume*, Doc. 44, and the *Transcript of the Rearraignment Hearing*, specifically Defendant's sworn declarations therein, Doc. 80-1, establish that he fully understood the process and consequence of pleading guilty before doing so.

Thus, this *Carr* factor weighs also against permitting the withdrawal of Defendant's guilty plea.

## IV. CONCLUSION

In light of the fact that the most significant *Carr* factors weigh against granting Defendant's *pro se* request to withdraw his guilty plea, as detailed herein, any inconvenience to the Court or the Government or the waste of judicial resources would not alone or in combination change the inevitable conclusion. Under the totality of the circumstances, and for the reasons discussed here, Defendant's Motion to Withdraw Guilty Plea, Doc. 72, should be

**DENIED**.  Further, all other relief sought by the Government in its related *Motion to Strike Defendant's Pro Se Motion to Vacate his Guilty Plea, and Alternatively, Government's Opposition to Defendant's Motion to Vacate*, Doc. 80, should likewise be **DENIED**.

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge.  28 U.S.C. § 636(b)(1)(B).**

**SO RECOMMENDED** on July 13, 2021.

*/s/ Renee Harris Toliver*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE